**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────────

**TERESA A. MINKIN,**

|                               |                        |
|-------------------------------|------------------------|
| **Petitioner,**               | **05-CV-1255**         |
|                               | **[03-CR-167]**        |
| v.                            |                        |

**UNITED STATES OF AMERICA.**

                         **Respondent.**

───────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

Teresa A. Minkin ("Petitioner") filed the instant motion pursuant to 28 U.S.C. § 2255

challenging her criminal conviction and sentence. For the reasons that follow, the motion is denied

and her petition is dismissed.

**II.  BACKGROUND**

Petitioner was indicted for conspiracy to possess with intent to distribute and distribution of

cocaine base (crack), cocaine, heroin, and methylenedioxy-methamphetamine (also known as

ecstasy) in violation of 21 U.S.C. §§ 841(a)(a) and 846.  Based upon the allegations in the

Superseding Indictment, Petitioner faced a mandatory minimum sentence upon conviction of 120

months. On December 22, 2003, Petitioner pled guilty to conspiracy to possess with intent to

distribute and distribution of crack amounting to at least 35 grams in the aggregate. Based upon

Petitioner's offense level and criminal history, she faced a United States Sentencing Guidelines'

range of between 120-150 months of incarceration. On April 8, 2005, Petitioner was sentence to 70

months of incarceration.  She did not appeal her conviction or sentence.

Petitioner filed the instant action under 28 U.S.C. § 2255 making arguments that are difficult

to decipher and,  at times, border on the absurd.[1]  Liberally reading the *pro se* pleadings[2] to raise the

strongest argument they suggest, see McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999),

Petitioner seemingly contends that: (a) the Court lacked jurisdiction over the underlying criminal

action.  Pet. ¶ 12(A)("Ground One");  (b) her constitutional right to effective assistance of counsel

was violated because (1) her appointed counsel left her alone with the prosecutor and a detective

---

[1] For instance, in support of her argument that the Court lacked jurisdiction over the underlying criminal action, Petitioner asserts:

> Movant states she was tried under the Article IV United States District Court under the Uniform Commercial Code, under Admiralty/Maritime Jurisdiction under a three-sided yellow and gold fringed flag of war, all in direct violation of the Constitution of the United States.

Pet. ¶ 12(A)("Ground One").  She continues this argument in her reply papers ("Declaration of Law"), asserting:

> The Flag flown in all court rooms across America is a military three-sided gold fringed flag of war, admiralty/maritime jurisdiction in direct violation of the Constitution. In a courtroom, the Judge only wants to recognize your all capital letters flag, i.e. your corporate coloined [*sic*] juristic [*sic*] trade name FLAG TERESA MINKIN. The law of flag tells us that the colors FLAG flown in any forum dictates the form and jurisdiction under which that entity is conducting business. By law, any court room flying a military flag is a military court room/tribunal under marshall [*sic*] law rule. American courtrooms are operating under admiralty/maritime jurisdiction.

Decl. L., p. 7 (caps. in original).

In other places, Petitioner argues that her conviction should be vacated because: Petitioner is not a "stockholder" in the "municipal corporation known as the 'United States'";  that "all laws are contract laws" and that the Assistant United States Attorney filed a memorandum that "outlin[es] the terms of a transaction or contract" but fails to satisfy the statute of frauds;  that Petitioner was tried in the United States District Court which is not the District Court of the United States; and that "as an Esquire," which is a title of nobility, her counsel was an "officer[] in service of the crown" that is "illegal and unlawful under the Constitution."  Id. at pp. 1, 6-9.

[2] The Court considers both the Petition and the reply papers in its attempt to decipher Petitioner's claims.

during a debriefing session in November of 2004, (2)  failed to make an argument at sentencing

under the holding of  Booker v. United States , 543 U.S. 220 (2005), and (3) failed to object to the

content of the Probation Department's Presentence Investigative Report. Pet. ¶ 12(B) ("Ground

Two"); and (c) her sentence was imposed in violation of the Constitution because:

> Prosecution obtained conviction by unconstitutional failure to disclose to Movant
> evidence favorable to Movant. Title 21 U.S.C. § 841(a)(1).
>
> (1) It was unconstitutional to question movant without her counsel present;
>
> (2) Fail to inform her Title 21 USC is not law.
>
> (3) Fail to inform the court Movant is entitled to the same consideration as Booker v.
> United States.

Pet. ¶ 12(C)("Ground 3").

The Government has opposed the motion, arguing that: (1) it is barred because Petitioner

waived her right to collateral attack of her conviction in her Plea Agreement,  and (2) the Petition

lacks substantive merit.  The Court will address the arguments *seriatim*.


## III.  DISCUSSION

### a. Waiver of Collateral Attack

The Court turns first to the Government's argument that Petitioner's claim is barred by the

terms of her Plea Agreement.  The uncontradicted record reflects that Petitioner signed a Plea

Agreement on December 22, 2003 that included a paragraph stating, in substance, that Petitioner

waived all rights to appeal or collaterally attack her conviction or any sentence that was 151 months

or less.  The Second Circuit has repeatedly upheld such waivers where the sentence is within the

range set out in the plea agreement and the plea agreement was entered into knowingly, voluntarily,

and with an awareness that the defendant was waiving her right to appeal or collaterally attack her sentence. Garcia-Santos v. United States, 273 F.3d 506, 509 (2d. Cir. 2001)(per curiam); United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995); see also United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d. Cir. 1993) (stating that "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless"). The transcript of Petitioner's guilty plea clearly demonstrates that Petitioner entered her Plea Agreement knowingly, intelligently, and with a full awareness that she was waiving her right to collaterally attack her sentence. See Plea Trans.[3] Further, she made no attempt to appeal her conviction or sentence despite being advised of that right at the time of sentencing, and she has not asserted in this matter that she did not understand the waiver at the time she signed the Plea Agreement. These circumstances satisfy "[e]ach of the critical factors discussed in Garcia-Santos" making the waiver enforceable. Snoussi v. United States, 2005 WL 2207055, at * 1 (S.D.N.Y. Sept. 9, 2005).

The fact that the Supreme Court decided Booker after the Plea Agreement was entered does

---

[3] The transcript of Petitioner's plea shows that at the time Petitioner was not under a physician or psychiatrist's care for any physical or mental condition and that she had not taken any alcohol or narcotics within the 48 hours immediately before her plea. Plea Trans. ("Trans.") pp. 3-4. She stated that the medications she was taking did not interfere with her "ability to understand the charges and the consequences." Trans. p. 4. Petitioner denied that anybody threatened her to get her to plead guilty, and she confirmed that she was "pleading guilty freely and voluntarily." Trans. p. 5. The Court fully described to Petitioner the rights should would receive if she went to trial, and advised her that she was waiving those rights by pleading guilty. Trans. pp. 10-11. Petitioner stated that her attorney explained the charge and the consequence of pleading, and she confirmed that she understood the charge and the consequences of pleading guilty. Trans. p. 11. Petitioner acknowledged that she signed the Plea Agreement after discussing it with her attorney who explained it to her. Trans. p. 18. Petitioner admitted that she understood what she was doing when she agreed to give up her right to appeal or to collaterally attack the conviction and any sentence of imprisonment of 151 months or less and she did so voluntarily. Trans. pp. 18-19. The Court found that Petitioner "pled guilty freely and voluntarily; that she is and was competent to enter such a plea; that she understands the charges against her and the consequences of pleading guilty; that there is and was a basis in fact for the Court accepting and entering the plea." Trans. p. 20.

not change this conclusion. See United States v. Haynes, 412 F.3d 37, 38-39 (2d Cir. 2005)(holding

appeal waiver enforceable despite subsequent Booker decision);  United States v. Morgan, 406 F.3d

135, 136-137 (2d Cir. 2005)(same).[4]   Similarly, Petitioner's claims of ineffective assistance of

counsel occurring after signing the plea agreement do not compel a different result because these

claims have no substantive merit (discussed infra) nor do they involve a contention that counsel was

ineffective in relation to her entering the Plea Agreement.  See United States v. Monzon, 359 F.3d

110, 119 (2d Cir. 2004)("finding an appeal waiver unenforceable simply because the defendant

makes [an ineffective assistance] claim where the record (a) indicates that the appeal waiver was

knowing and voluntary and (b) does not show merit in the ineffective assistance-of-counsel claim,

would render the plea bargaining process and the resulting agreement meaningless.")(internal

citation and quotation omitted); Snoussi, 2005 WL 2207055, at * 2 ("Because Petitioner's claim

satisfies neither the performance nor the prejudice prong of Strickland v. Washington, 466 U.S. 668,

687-88, 693-94 (1984), it cannot invalidate his knowing and voluntary waiver.")(citing Monzon,

359 F.3d at 119); Muniz v. United States, 360 F.Supp.2d 574, 577 (S.D.N.Y. 2005)("An

enforceable waiver bars claims based on grounds that arose after, as well as before, the agreement

was signed. However, a waiver of collateral attack rights in a plea agreement is unenforceable where

---

[4] As the Second Circuit explained in Haynes, 412 F.3d at 38-39:

In Morgan, we considered whether a clause waiving any appeal of a sentence, in a plea agreement entered into prior to Booker, barred a subsequent appeal based on the district court's imposition of a sentence under the mandatory Guidelines regime. Morgan, 406 F.3d at 136. We held that the waiver was enforceable, citing two reasons. First, each party benefitted from the plea agreement: the defendant by limiting his criminal exposure and the government by a guaranteed outcome without the need for trial or appeal. Id. at 137. Second, appeal waivers are applicable to issues arising subsequent to the plea agreement, including issues created by new judicial decisions. Id. (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) and Brady v. United States, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L .Ed.2d 747 (1970)). We noted that the possibility of changes in the law is simply one of the risks allocated by the parties' agreement. Morgan, 406 F.3d at 137.

Id.

5

the petitioner claims ineffective assistance of counsel in connection with the plea agreement itself.

... Because petitioner's waiver of his right to collaterally attack his sentence was knowing and

voluntary, and because there is no merit to his claim that he received constitutionally ineffective

representation in entering his plea agreement, the waiver provision is enforceable.")(citing, *inter

alia*, Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002), cert.

denied, 537 U.S. 1146 (2003)).

Accordingly, the Court finds that Petitioner's waiver of her right to collaterally attack her

conviction and/or sentence is enforceable and bars the instant action.

### b.  Substantive Claims

Nevertheless and assuming *arguendo* that the instant action is not barred, it must be

dismissed because it lacks all substantive merit.

### 1.  Lack of Jurisdiction

Petitioner's claims that Court lacked jurisdiction over this matter are wholly without merit.

Article III on the United State's Constitution vests the Court with jurisdiction to adjudicate cases

arising under the laws of the United States. U.S. CONST. art. III, § 2, cl. 2.  Further, "[t]he district

courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of

all offenses against the laws of the United States." 18 U.S.C. § 3231.  Petitioner was charged with,

and admitted, violating provisions of Title 21 of the United States Code.  Her state of residency, or

belief that she is not bound by the laws of the United States, see Decl. L. p. 1-2, is immaterial to this

Court's authority to adjudicate alleged violations of federal criminal statutes.

To the extent Petitioner argues that applicable provisions of Title 21 of the United States

Code are unconstitutional or improperly enacted, the argument fails.  The Second Circuit has held

that Congress acted within its power under the Commerce Clause in regulating drug activity.  <u>See</u>

<u>United States v. Walker</u>, 142 F.3d 103, 111 (2d cir. 1998), <u>cert. denied</u>, 525 U.S. 896 (1998); <u>see</u>

<u>also</u> <u>United States v. Genao</u>, 79 F.3d 1333, 1336-37 (2d Cir. 1996).  Every Circuit to consider the

issue has found the federal drug statutes to be constitutional.  <u>See, e.g.</u>, <u>U.S. v. Outen</u>, 286 F.3d 622,

634-36 (2d Cir. 2002) (federal drug trafficking statute was constitutional on its face, even in light of

<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)); <u>U.S. v. Lopez-Lopez</u>, 282 F.3d 1, 22 (1st Cir. 2002),

<u>cert. denied</u>, 536 U.S. 949 (2002) (statute criminalizing certain drug related activities were held

constitutional); <u>U.S. v. Scroggins</u>, 411 F.3d 572, 575 (5th Cir. 2005) (<u>Apprendi v. New Jersey</u> did

not render federal drug statute unconstitutional); <u>U.S. v. Westbrook</u>, 125 F.3d 996, 1010 (7th Cir.

1997), <u>cert. denied</u>, 522 U.S. 1036 (1997) (federal law governing crack is not unconstitutional on its

face or as applied); <u>U.S. v. Fernandez</u>, 388 F.3d 1199, 1219 (9th Cir. 2004), <u>cert. denied</u>, 125 S. Ct.

2286 (2005)(citing <u>U.S. v. Montes-Zarate</u>, 552 F.2d 1330, 1331 (9th Cir. 1977), <u>cert. denied</u>, 435

U.S. 947 (1978)) (interstate nexus does not need to be proved to establish jurisdiction); <u>U.S. v.</u>

<u>Price</u>, 265 F.3d 1097, 1106 (10th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1099 (2002) (citing <u>U.S. v.</u>

<u>Walker</u>, 72 F.3d 1453, 1475 (10th Cir. 1995)) (The relevant sections regulate activities which

substantially affect interstate commerce and, therefore, are constitutional).

### 2. Ineffective Assistance of Counsel

Turning to Petitioner's claims of ineffective assistance of counsel, Petitioner fails to set forth

a viable claim of constitutional ineffectiveness under the prevailing standard set forth by the

Supreme Court in  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In order to state a Sixth Amendment claim for ineffective assistance of counsel, Petitioner

must  "(1) demonstrate that [her] counsel's performance 'fell below an objective standard of reasonableness' in light of the 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005 )(citations omitted) (quoting Strickland, 466 U.S. at 688, 694).  In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Because of this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  The standard is one of objective reasonableness, and the Strickland test's first prong cannot be met "merely by showing that [her] counsel employed poor strategy or made a wrong decision.  Instead, the petition must establish that [her] counsel 'made errors so serious that counsel was not functioning as the "counsel"guaranteed . . . by the Sixth Amendment.'" Cisse v. United States, 330 F. Supp. 2d 336, 342 (S.D.N.Y. 2004) (quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." (citing Strickland, 466 U.S. at 688-89).  Furthermore, the Court must evaluate counsel's performance from his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998) (citing Stickland, 466 U.S. at 689).

To satisfy the second prong of Strickland, Petition "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Id. at 694.

## A.  Leaving Petitioner Alone During a Debriefing Session

Petitioner's first claim of constitutional ineffectiveness is based on the contention that counsel left Petitioner alone with the prosecutor and an investigator during a debriefing session in November of 2004.  This debriefing session occurred after Petitioner had already entered a guilty plea.  Whether such conduct falls below an objective standard of reasonableness is debatable, see United States v. Manzo-Andrade, No. 99-1269, 2000 WL 232040, at *1 (2d Cir. N.Y. Jan. 26, 2000) (unpublished decision) (holding that "because appellant [made] no claim that he ever requested and was denied counsel's presence, counsel's failure to accompany him during certain debriefings was not objectively unreasonable"); United States v. Ming He, 94 F.3d 782, 793 (2d Cir. 1996)("A defendant is not required to invite counsel to accompany him to a debriefing session, nor is the government prevented from conditioning a cooperation agreement on the defendant's waiver of this protection. In short, defense counsel's assistance is waivable."), but even assuming that it does, Petitioner fails to demonstrate any prejudice arising form the asserted deficiency in counsel's performance.  Indeed, Petitioner cites no prejudice arising from the debriefing session, and the record reflects that Petitioner received a favorable sentence in light of the charge against her.  Under these circumstances, Petitioner's claim of ineffective assistance of counsel fails under the second prong of the Strickland test.

## B.  Failing to Raise Booker Argument at Sentencing

Petitioner also maintains that counsel was constitutionally ineffective because he failed to raise a Booker argument at sentencing.  In this regard, Petitioner asserts: "In Booker, the sentencing court states your constitutional right to due process is violated if the fact finder is not by jury.

Movant states <u>Booker</u> should be applied to her case and decision." Pet. ¶ 12(B). To the extent

Petitioner asserts an <u>Apprendi</u>-type argument under <u>Booker</u>, <u>see</u> <u>Apprendi v. New Jersey</u>, 530 U.S.

466, 490 (2000), the argument fails because the facts that formed the basis of her sentence were

admitted by her at the time of plea, not determined by the Court. <u>See</u> <u>Booker</u>, 543 U.S. at 244

("Accordingly, we reaffirm our holding in <u>Apprendi</u>: Any fact (other than a prior conviction) which

is necessary to support a sentence exceeding the maximum authorized by the facts established by a

plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a

reasonable doubt.").

### C.  Failure to Object to the Presentence Investigative Report

Petitioner's claim that counsel was constitutionally ineffective because he did not raise

certain objections she had to the Presentence Investigative Report also fails. She makes no

indication of what in the Presentence Investigative Report she found objectionable, or why she did

not raise the objection when asked at sentencing. Further, Petitioner presents no argument as to how

the unidentified objections would have changed her sentence. Accordingly, the claim fails under

both prongs of the <u>Strickland</u> test. <u>See</u> <u>Strickland</u>, 466 U.S. at 690 ("A convicted defendant making

a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to

have been the result of reasonable professional judgment. The Court must then determine whether,

in light of all the circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."); <u>Parnes v. United States</u>, 1995 WL 758805, at *3 (S.D.N.Y.

Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged errors of

Petitioner's counsel fell below 'prevailing professional norms'.... Accordingly, the Court rejects

Petitioner's claim that he received ineffective assistance of counsel."); <u>Matura v. United States</u>, 875

10

F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] .... fails to overcome the presumption [under Strickland] that counsel acted reasonably...."); Slevin v. United States, 1999 WL 549010, at *5 (S.D.N.Y. 1999)(a habeas petitioner must show how counsel's failures prejudiced the outcome of the trial), aff'd, 234 F.3d 1263 (2d Cir. 2000).

### 3. Other Arguments

Petitioner's challenges to the prosecutor's conduct as asserted in "Ground 3" of her Petition fail for the reasons discussed above.  Her remaining arguments, see fn.1 *supra*,  have no legal merit.

### c. Certificate of Appealability

The Court finds that Petitioner presents no viable issues on this motion warranting a Certificate of Appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983); see also United States v. Cole, 2005 WL 3454322, *4 (E.D.N.Y. Dec. 7, 2005)(citing cases for the proposition that a district court may *sua sponte* decide whether a COA should issue in a habeas petition.).  Therefore, a Certificate of Appealability is denied**.**

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and

her petition is **DISMISSED**.  A Certificate of Appealability pursuant to Rule 22(b) of the Federal

Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2) is **DENIED**.

 **IT IS SO ORDERED**.

DATED:May3,2006

Thomas J. McAvoy
Senior, U.S. District Judge